**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BROADWAY HOLDINGS VI, LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> DAYANA POLYPLAST INC. and PRAGNESH PATEL, <br><br> *Defendants.* | Civil Action No.: 2:19-cv-18914-KM-JBC <br><br><br> **FIRST AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff Broadway Holdings VI, LLC, ("Plaintiff"), by their undersigned counsel, as and for their Complaint against Defendant Dayana Polyplast Inc. ("Defendant"), hereby allege upon knowledge with respect to their own acts and upon information and belief with respect to all other allegations, as follows:

**NATURE OF ACTION**

1.      This action arises from Defendants' trademark infringement and trademark counterfeiting in violation of Section 43 of the Lanham Act, 15 U.S.C. 1125(a), unfair competition and false designation of origin in violation of Section 43 of the Lanham Act, 15 U.S.C. 1125(a), copyright infringement under Copyright Act, 17 U.S.C. §§ 106 and 501, unfair competition and trafficking in counterfeit marks under the common laws of the State of New Jersey and other States.  The action is brought by Plaintiff for violation of its trademark, copyright and other intellectual property rights by Defendants.  Defendants have intentionally copied the Intellectual Property of Plaintiff by seeking to trade on the longstanding reputation for quality and the goodwill of Plaintiff by using purposefully identical and confusing marks to those owned, used and known throughout the United States and North America as signifying Plaintiff.

1

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events, omissions and acts giving rise to this litigation have occurred in this district.

## PARTIES

4.      Plaintiff, Broadway Holdings VI, LLC ("BH") is a New Jersey limited liability company, with its principal place of business at 1 S. Middlesex Avenue, Monroe Township, NJ 08831.  Plaintiff's exclusive licensee Broadway Kleer-Guard Corp. ("BK") is engaged in the business of marketing and selling paper and plastic bags including bags that are used in pharmacies.

5.      Defendant Dayana Polyplast Inc. ("Dayana") is a New Jersey corporation, with a principal place of business at 125 Broad Ave., Suite 12, North Bergen, NJ 07047.  Dayana is engaged in the business of marketing and selling plastic bags to many different industries, and, upon information and belief, markets and sells its products throughout the United States, and solicits and conducts business in and/or derives revenue from products provided to residents of New Jersey and in this District, including the processing and fulfillment of Dayana orders for bags, being carried out in whole or in part, in New Jersey by citizens of this State.

6.      Defendant Pragnesh Patel ("Patel") is an individual who resides in the State of New Jersey.  Patel founded Dayana and is the Chairman.  Patel is also the registered agent of Dayana.

## FACTS

**I.      The Ask Your Pharmacist Marks Are Used By Defendant to Market its Bags**

7.      Defendant requested a quote to manufacture two sizes of printed paper bags which

2

utilized an image containing the Plaintiff's logo .  The Dayana estimate dated April 8, 2019 had a due date of May 8, 2019.  The estimate contained images of two different sizes of paper bags having the registered trademarks and copyrights of BH.  The estimate provided detailed product specifications, including bag size dimensions, bag color, bag thickness and case pack.  The estimate even had Dayana assigned item numbers for each bag size. The product specifications closely mirrored BK's specifications for the same bag sizes.  At no time did Dayana have authorization to promote or use any of BH's trademarks and copyrights.

8.    On April 29, 2019, Counsel for BH sent by overnight and certified mail a Cease and Desist letter to Pragnesh Patel of Dayana at their location in North Bergen New Jersey.  The letter provided information to Dayana about their violation of proprietary rights of BH, and demanded that Dayana cease and desist all further violations.  The letter provided a date of May 3, 2019 to receive an answer that Dayana would comply with these demands.  BH reserved its rights and claims against Dayana.

9.    No response was received by BH or its attorney by May 3, 2019.  A letter from Counsel for Dayana, dated May 9 was received by Counsel for BH on May 11.  The letter stated that Dayana was asked to provide a price quote for the production of bags of a specific size with a two-color logo.  The letter also stated that a customer showed Dayana a sample bag which contained BH's logo.  Dayana admitted to taking a picture of BK's bag with BH's logo, and sent the same to another company to get a price quote.  Counsel for Dayana has since advised their client not to engage in this practice in the future, and further stated that Dayana apologizes for any misunderstandings that may have been caused.

10.    BK, the exclusive licensee of BH, is a well-known provider of bags. BK advertises, promotes and sells its bags in commerce under various trademarks, some of which are owned by

3

BH, including, inter alia, the mark "ASK YOUR PHARMACIST ("AYP Mark") and RX ASK YOUR PHARMACIST ABOUT HEALTH NEEDS AND MORE and DESIGN ("RXAYP and DESIGN Mark"). BK's use of the AYP Mark and RXAYP and DESIGN Mark in commerce is defined as the use by its exclusive licensee BH of the AYP and RXAYP AND DESIGN Marks in commerce.

### A.   The ASK YOUR PHARMACIST Mark

11.     Through its exclusive licensee BK, BH has continuously used the AYP mark in commerce in connection with the marketing, promotion, and sale of bags throughout the United States since at least as early as June 2000.

12.     On January 12, 2016, BK filed an application in the U.S. Patent and Trademark Office ("PTO") to register its mark ASK YOUR PHARMACIST, Application Serial No. 76718863, for use in connection with "paper bags, plastic bags, namely, plastic bags for packaging, plastic shopping bags and general purpose plastic bags" in International Class 16. BK filed proof with the PTO of use of the ASK YOUR PHARMACIST mark in commerce in connection with bags since as early as June 2000. On March 31, 2016, BK assigned all of its rights, title and interest to the mark ASK YOUR PHARMACIST along with the goodwill associated with the mark to BH. BH's use of its ASK YOUR PHARMACIST mark with bags has been valid and continuous since that time and has not been abandoned.

13.     On June 20, 2017, the PTO issued a registration stating that the ASK YOUR PHARMACIST mark is entitled to registration.

### B.   The RX ASK YOUR PHARMACIST ABOUT HEALTH NEEDS AND SO MUCH MORE… and DESIGN Mark

14.     Through its exclusive licensee BK, BH has continuously used the RX ASK YOUR PHARMACIST ABOUT HEALTH NEEDS AND SO MUCH MORE… and DESIGN mark in

commerce in connection with the marketing, promotion, and sale of bags throughout the United States since at least as early as June 2000.

15.     BH is the owner of U.S. Trademark Registration No. 2,561,326 for the mark RX ASK YOUR PHARMACIST ABOUT HEALTH NEEDS AND SO MUCH MORE… and DESIGN Mark registered on April 16, 2002, for use in connection with "paper and plastic bags for merchandise packaging" in International Class 16 through an assignment dated March 21, 2016, where BK assigned all of its rights, title and interest to the mark ASK YOUR PHARMACIST along with the goodwill associated with the mark to BH.  BK filed proof with the PTO of use of the RX ASK YOUR PHARMACIST ABOUT HEALTH NEEDS AND SO MUCH MORE… and DESIGN Mark in commerce in connection with bags since at least as early as June 1, 2000.  BH's use of its RX ASK YOUR PHARMACIST ABOUT HEALTH NEEDS AND SO MUCH MORE… and DESIGN Mark with bags has been valid and continuous since that time and has not been abandoned.

## II.     Plaintiff's Goodwill in the AYP Marks

16.     BH and BK have invested and continue to invest a great deal of time, effort and expense in advertising, marketing, promoting and selling its bags under the AYP Marks throughout the United States, at all times heretofore mentioned as to the first use of the respective AYP Marks. By virtue thereof, BH and BK have acquired a strong reputation and extensive and valuable good will in each and every of the aforesaid AYP Marks.  The AYP Marks are widely recognized and have become associated by consumers and the industry as marks used exclusively by BK and as signifying goods of the highest quality originating with BK.

17.     Defendants are improperly using copyright-protected material that are on the bags created by Plaintiff.

**FIRST CAUSE OF ACTION**
**(Trademark Infringement of AYP Mark)**

18.     Plaintiff realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

19.     Since at least as early as June 2000, and beginning on a date long prior to any date upon which Defendants can establish for use of the AYP mark, BH, through its exclusive licensee BK, has continuously used its AYP mark in commerce in connection with the marketing, promotion, and sale of BK's bags throughout the United States.  BH's and BK's use of the AYP mark with BK's bags has been valid and continuous since that time and has not been abandoned.

20.     BH is the owner of U.S. Trademark Registration No. 5,225,113 for the mark ASK YOUR PHARMACIST registered on June 20, 2017, for use in connection with "paper bags, plastic bags, namely, plastic bags for packaging, plastic shopping bags and general purpose plastic bags" in International Class 16.

21.     By virtue of BH's and BK's long prior use of the AYP mark in commerce on or in connection with BK's bags, BH owns common law rights in the AYP mark, and has valid and enforceable rights under the common law.

22.     BH's and BK's first use of the AYP mark in commerce is earlier than any date of first use Defendant may establish for the AYP mark.  BH has priority based on its prior use of the AYP mark in commerce in connection with BK's bags before any date of first use that Defendants may establish for the AYP marks.

23.     Since at least as early as June 2000, BH, through its exclusive licensee BK, has engaged in extensive, nationwide advertising, promotion and use of its AYP mark in connection with BK's bags, and BK has invested a substantial amount of time and money to advertise and promote its bags under the AYP mark.  By reason of years of continuous and extensive advertising,

promotion, use, and public exposure, BH's AYP mark has achieved widespread and favorable public recognition as a mark exclusively identified with BH and BK, and BK's bags, and designates goods sold with the mark as goods of the highest quality originating with BH and BK. BK has had substantial nationwide sales of its bags under the AYP mark. BH and BK have acquired a considerable and valuable goodwill and wide-scale recognition for the AYP mark, which is an asset of great value.

24. BH has taken reasonable and substantial steps to protect the value and exclusivity of the AYP trademark, including giving notice that the AYP mark is owned by BH. BH is entitled to control all use of the AYP mark and confusingly similar marks in connection with bags.

25. Subsequent to BH's and BK's adoption and use of the AYP mark, Defendants, without BH's authorization, began to use the identical and confusingly similar AYP mark to market, promote, and offer for sale its bags throughout the United States. Defendants' use of the AYP mark in connection with its bags is likely to cause confusion, mistake or deception with BH's AYP mark in the minds of prospective purchasers as to the origin or source of Defendants' bags. Consumers familiar with BK's goods are likely to mistakenly believe that Defendants' goods, services, or commercial activities are sponsored, authorized, endorsed, affiliated or associated with or otherwise approved by BH or its exclusive licensee BK.

26. Defendant uses the AYP mark in connection with the same type of goods sold by BK, in commerce and in the same channels of trade as BK and to the same classes of purchasers as BK's bags.

27. The consumer confusion, mistake or deception from Defendants' use of the AYP mark in connection with Defendants' bags is likely to result in loss of revenues to BK and/or damage BH and BK's reputation and cause a significant level of sales by Defendants to consumers

7

who would be confused by the use of Defendants' AYP mark into believing that BK is the source of Defendants' goods.  As a result, Defendants' use of the AYP mark will result in Defendants trading off and benefiting from the goodwill associated with BH and BK, and/or diverting income from BH and BK to Defendant, resulting in ill-gotten gains by Defendants.

28.     The aforesaid wrongful and unauthorized use of the AYP mark by Defendants and its agents includes, but is not limited to, use on marketing materials or the products themselves.

29.     Deficiencies or faults in the quality of Defendants' bags are likely to reflect negatively upon, tarnish and/or seriously injure the reputation which BH and BK have established for BK's bags under the AYP mark.

30.     Defendants adopted and used the AYP mark with full knowledge of BH's and BK's prior extensive and exclusive use of the AYP mark in connection with BK's marketing and selling bags, and Defendants engaged in said actions for the purpose of trading upon BH's and BK's goodwill, giving Defendants' products a salability which they otherwise would not have.

31.     Upon information and belief, all of Defendants' acts complained of herein were done with the intent to cause confusion, mistake or deception among consumers as to an affiliation between Defendants and BH and/or BK, and to capitalize and trade improperly on the long-standing and hard-earned goodwill accruing to BH and BK in the AYP mark and the reputation BH and BK established in connection with BK's products and services.

32.     Defendants' unauthorized and tortious conduct has deprived and will continue to deprive BH and BK of the ability to control the consumer perception of BK's products and services offered under the AYP mark, placing the valuable reputation and goodwill of BH and BK in the hands of Defendants.

33.     Defendants have willfully and knowingly violated and infringed, and threaten to

further violate and infringe, BH's and BK's rights in the mark AYP in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, with the intention of confusing, deceiving and/or misleading Defendant's customers, the relevant industry and the public at large, and/or wrongfully trading on the goodwill and reputation of BH and BK.

34.     Defendants will continue to unjustly benefit, at BH's and BK's expense, from gains, profits and/or advances derived from Defendants' deliberate use of the identical AYP mark in connection with the marketing, promotion and sale of Defendants' bags.

35.     Defendants' aforesaid acts have caused and continue to cause great and irreparable damage to BH and BK, including the continuing loss of the goodwill and reputation BH and BK established in the AYP mark. This continuing loss of goodwill cannot be properly calculated, and thus constitutes irreparable harm and an injury for which BH and BK have no adequate remedy at law, and said irreparable harm and injury will continue unless enjoined by this Court.

36.     As a result of the foregoing, a remedy at law is not adequate to compensate BH and BK for the injury caused and threatened by Defendants' infringement of BH's and BK's trademark rights and Defendants' unfair business practices.

37.     As a result of the foregoing, BH and BK are entitled to an injunction permanently enjoining Defendants from using the AYP mark; from marketing, selling and distributing Defendants' bags through infringing use of the AYP marks; and permanently enjoining Defendants from converting, disseminating, distributing, exploiting or otherwise capitalizing on use of the AYP marks.

**SECOND CAUSE OF ACTION**
**(For Vicarious and/or Contributory Trademark Infringement of AYP Mark)**

38.     Plaintiff realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

9

39.     As Founder and Chairman of Dayana, Patel had knowledge of the infringing activity, participated materially in the infringing activity with respect to the AYP Mark, exercised control over the means of the infringing activity, and had the right and ability to supervise the infringing activity, and did in fact supervise it.

40.     Upon information and belief, Patel stood to benefit personally from the infringing activity.

41.     Accordingly, Patel is vicariously and/or contributorily liable for the infringing activity.

42.     By reason of the Defendants' infringing activity and contributory and/or vicarious infringement as alleged above, Plaintiff has suffered and will continue to suffer substantial damages in an amount to be established at trial.

<u>THIRD CAUSE OF ACTION</u><br>(Trademark Infringement RXAYP AND DESIGN Mark)

43.     Plaintiff realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

44.     Since at least as early as June 2000, and beginning on a date long prior to any date upon which Defendants can establish for use of the RXAYP AND DESIGN mark, BH, through its exclusive licensee BK, has continuously used its RXAYP AND DESIGN mark in commerce in connection with the marketing, promotion, and sale of BK's bags throughout the United States. BH's and BK's use of the RXAYP AND DESIGN mark with BK's bags has been valid and continuous since June 2000, and has not been abandoned.

45.     BH is the owner of U.S. Trademark Registration No. 2.561.326 for the mark RXAYP AND DESIGN registered on April 16, 2002, for use in connection with "paper and plastic bags for merchandise packaging" in International Class 16.   U.S. Trademark Registration

No.2,561,326 issued from Application Serial No. 76094124 filed in the PTO on July 21, 2000 based on BH's exclusive license, BK's use of the RXAYP AND DESIGN mark in commerce in connection with those goods since at least as early as June 2000.

46.     By virtue of BH's and BK's long prior use of the RXAYP AND DESIGN mark in commerce on or in connection with BK's bags, BH owns common law rights in the mark RXAYP AND DESIGN, and has valid and enforceable rights under the common law.

47.     BH's first use of its RXAYP AND DESIGN mark in commerce is earlier than any date of first use Defendant may establish for the RXAYP AND DESIGN mark.  BH has priority based on BK's prior use of the RXAYP AND DESIGN mark in commerce in connection with BK's bags before any date of first use that Defendants may establish for the RXAYP AND DESIGN mark.

48.     Since at least as early as June 2000, BH, through its exclusive licensee BK, has engaged in extensive, nationwide advertising, promotion and use of its RXAYP AND DESIGN mark in connection with BK's bags, and BK has invested a substantial amount of time and money to advertise and promote its bags under the RXAYP AND DESIGN mark.  By reason of years of continuous and extensive advertising, promotion, use, and public exposure, BH's RXAYP AND DESIGN mark has achieved widespread and favorable public recognition as a mark exclusively identified with BH and BK, and BK's bags, and designates bags sold with the mark as goods of the highest quality originating with BK.  BK has had substantial nationwide sales of its bags under its RXAYP AND DESIGN mark.  BH and BK have acquired a considerable and most valuable goodwill and wide-scale recognition for the RXAYP AND DESIGN mark, which is an asset of great value.

49.     BH has taken reasonable and substantial steps to protect the value and exclusivity

11

of the RXAYP AND DESIGN mark, including giving notice that the RXAYP AND DESIGN mark is owned by BH.  BH is entitled to control all use of the RXAYP AND DESIGN mark and confusingly similar marks in connection with bags.

50.    Subsequent to BH's and BK's adoption and use of the RXAYP AND DESIGN mark, Defendants, without BH's authorization, began to use the identical RXAYP AND DESIGN mark to market, promote, offer for sale and/or sell Defendants' bags throughout the United States. Defendants' use of the RXAYP AND DESIGN mark in connection with its bags is likely to cause confusion, mistake or deception with BH's RXAYP AND DESIGN mark in the minds of prospective purchasers as to the origin or source of Defendants' bags.  Consumers familiar with Defendants' goods are likely to mistakenly believe that Defendants' goods, services, or commercial activities are sponsored, authorized, endorsed, affiliated or associated with or otherwise approved by BH or its exclusive licensee BK.

51.    Defendants use the RXAYP AND DESIGN mark in connection with the same type of goods sold by BK, in commerce and in the same channels of trade as BK and to the same classes of purchasers as BK's bags.

52.    The aforesaid wrongful and unauthorized use of the RXAYP AND DESIGN mark by Defendants and their agents includes, but is not limited to, use in marketing materials, and/or on the products themselves.

53.    The consumer confusion, mistake or deception from Defendants' use of the RXAYP AND DESIGN mark in connection with its bags is likely to result in loss of revenues to BK and/or damage BH's and BK's reputation and/or cause a significant level of sales by Defendants to consumers who would be confused by the use of Defendants' RXAYP AND DESIGN mark into believing that BK is the source of Defendants' goods.  As a result, Defendants'

12

use of the RXAYP AND DESIGN mark will result in Defendants trading off and benefiting from the goodwill associated with BH and BK, and/or diverting income from BH and BK to Defendants, resulting in ill-gotten gains by Defendants.

54. Deficiencies or faults in the quality of Defendants' bags are likely to reflect negatively upon, tarnish and/or seriously injure the reputation which BH and BK have established for BK's bags under the RXAYP AND DESIGN mark.

55. Defendants adopted and used the RXAYP AND DESIGN mark with full knowledge of BH's and BK's prior extensive and exclusive use of the RXAYP AND DESIGN mark in connection with marketing and selling bags, and engaged in said actions for the purpose of trading upon BH's and BK's goodwill, giving Defendants' products a salability which Defendants otherwise would not have.

56. Upon information and belief, all of Defendants' acts complained of herein were done with the intent to cause confusion, mistake or deception among consumers as to an affiliation between Defendants and BH and/or BK, and to capitalize and trade improperly on the long-standing and hard-earned goodwill accruing to BH and BK in the RXAYP AND DESIGN mark and the reputation BH and BK established in connection with BK's products and services.

57. Defendant's unauthorized and tortious conduct has deprived and will continue to deprive BH and BK of the ability to control the consumer perception of BK's products and services offered under the RXAYP AND DESIGN mark, placing the valuable reputation and goodwill of BH and BK in the hands of Defendants.

58. Defendants have willfully and knowingly violated and infringed, and threaten to further violate and infringe, BH's and BK's rights in the mark RXAYP AND DESIGN in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, with the intention of confusing, deceiving

and/or misleading Defendants' customers, the relevant industry and the public at large, and/or wrongfully trading on the goodwill and reputation of BH and BK.

59.     Defendants will continue to unjustly benefit, at BH's and BK's expense, from gains, profits and/or advances derived from Defendants' deliberate use of the confusingly similar RXAYP AND DESIGN mark in connection with the marketing, promotion and sale of Defendants' bags.

60.     Defendants' aforesaid acts have caused and continue to cause great and irreparable damage to BH and BK, including the continuing loss of the goodwill and reputation BH and BK established in the RXAYP AND DESIGN mark. This continuing loss of goodwill cannot be properly calculated, and thus constitutes irreparable harm and an injury for which BH and BK have no adequate remedy at law, and said irreparable harm and injury will continue unless enjoined by this Court.

61.     As a result of the foregoing, a remedy at law is not adequate to compensate BH and BK for the injury caused and threatened by Defendants' infringement of BH's and BK's trademark rights and Defendants' unfair business practices.

62.     As a result of the foregoing, BH and BK are entitled to an injunction permanently enjoining Defendant from using the RXAYP AND DESIGN mark; from marketing, selling and distributing the Dayana bags through infringing use of the RXAYP AND DESIGN marks; and permanently enjoining Defendant from converting, disseminating, distributing, exploiting or otherwise capitalizing on use of BH's RXAYP AND DESIGN mark.

**FOURTH CAUSE OF ACTION**
**(For Vicarious and/or Contributory Trademark Infringement of RXAYP AND DESIGN Mark)**

63.     Plaintiff realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

14

64.     As Founder and Chairman of Dayana, Patel had knowledge of the infringing activity, participated materially in the infringing activity with respect to the RXAYP and DESIGN Mark, exercised control over the means of the infringing activity, and had the right and ability to supervise the infringing activity, and did in fact supervise it.

65.     Upon information and belief, Patel stood to benefit personally from the infringing activity.

66.     Accordingly, Patel is vicariously and/or contributorily liable for the infringing activity.

67.     By reason of the Defendants' infringing activity and contributory and/or vicarious infringement as alleged above, Plaintiff has suffered and will continue to suffer substantial damages in an amount to be established at trial.

**FIFTH CAUSE OF ACTION**
**(False Designation of Origin and Unfair Competition)**

68.     Plaintiff realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

69.     Defendants use the identical marks, AYP and RXAYP AND DESIGN in connection with their bags that infringe on BH's AYP and RXAYP AND DESIGN trademark rights.

70.     Defendants' use of the AYP and RXAYP AND DESIGN marks is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants and their products with AYP and RXAYP AND DESIGN of BH and BK as to the origin, sponsorship or approval of Defendants and their products, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

71.     Defendant's use of the AYP and RXAYP AND DESIGN marks to advertise or

promote Defendants' bags is a misrepresentation of the nature, characteristics, and quality of Defendants' bags, which said misrepresentation creates a likelihood that the public would affiliate Defendants' bags with that of BH and BK.

72.     Defendants' use of its AYP and RXAYP AND DESIGN marks was done in bad faith, knowingly, willfully and with the intent to falsely designate the origin of the marks, even though BH and BK own the exclusive rights to use the marks AYP and RXAYP AND DESIGN in association with bags.

73.     Defendants' use of the AYP and RXAYP AND DESIGN marks creates false, deceptive and misleading statements constituting false representations and false advertising in violation of Section 43(a) of the Lanham Act, 11 U.S.C. § 1125(a).

74.     Defendants have deliberately and willfully attempted to trade on BH's and BK's long-standing and hard-earned goodwill in its marks and the reputation established by BH and BK in connection with its products, as well as in order to confuse consumers as to the origin and sponsorship of Defendants' goods and to pass off Defendants' products in commerce as those of BH and BK.

75.     Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive BH and BK of the ability to control the consumer perception of its products offered under BH's marks, placing the valuable reputation and goodwill of BH and BK in the hands of Defendants.

76.     Defendants' conduct as set forth above has affected interstate commerce and violates the provisions of 15 U.S.C. § 1125(a) and BH and BK have been damaged by Defendants' aforesaid violations.

77.     BH and BK have no adequate remedy at law.

78. As a result of Defendants' aforesaid conduct, BH and BK have suffered commercial damage, as well as the continuing loss of the goodwill and reputation established by BH and BK in its marks. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which BH and BK have no adequate remedy at law. BH and BK have been and will continue to be irreparably harmed unless and until Defendants are enjoined by this Court.

79. As a result of the foregoing, BH and BK are entitled to injunctive relief as well as monetary damages.

80. As a result of the foregoing, BH and BK are entitled to treble damages. Defendants had direct and full knowledge of BH's and BK's prior use of and rights in their marks before the acts complained of herein. The knowing, intentional and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a)

81. As a result of the foregoing, BH and BK are entitled to attorney's fees.

**SIXTH CAUSE OF ACTION**
**(Federal Unfair Competition)**

82. Plaintiff realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

83. BK has been and now is engaged in the business of developing, marketing and selling bags. Beginning on a date long prior to any date upon which Defendants can rely, BH through its exclusive licensee, BK, has extensively and continuously used the trademarks AYP and RXAYP AND DESIGN in interstate commerce in connection with the marketing, promotion and sale of its bags. BK has widely advertised and sold its bags under its trademarks, including using its marks on its products, in its marketing and sales information, and/or on the packaging for its products.

84.     Through widespread and favorable public acceptance and recognition, the trademarks AYP and RXAYP AND DESIGN have become assets of substantial value as symbols of BH and BK, their quality products and their goodwill.  The aforesaid trademarks have come to be recognized as identifying BK as the source of its products and symbolizes valuable goodwill belonging to BK.  Such recognition and goodwill arose and accrued prior to the acts of Defendanst complained of herein.

85.     BK has expended significant time and money in promoting and advertising its bags under the aforesaid marks, and the marks have become associated with BK and BH as denoting the source or origin of high quality products.  In the bag market and to the consumers of such products, the marks denote BH and BK as the source or origin of such products.

86.     At all times hereinafter mentioned, BH had and continues to have the right to obtain the full benefit of the goodwill inherent in the collective use of its marks AYP and RXAYP AND DESIGN with respect to the conduct of its business and in conjunction with selling bags and using certain marketing information and slogans on the bags.

87.     At a point in time long after BK began to market, advertise and sell its bags under the trademarks AYP and RXAYP AND DESIGN, Defendants began to advertise, and offer for sale their bags through the infringing use of identical, and/or confusingly similar marks on or in connection with its bags and using certain marketing information and slogans on the bags that are identical with the information and slogans on BH's bags.

88.     Defendants' use of AYP and RXAYP AND DESIGN marks is without authorization by BH.  Defendants do not have, nor have ever had, any right or authorization to use any of BH's trademarks.

89.     Defendants have used and continue to use the infringing marks in connection with

18

the same type of products as BH and BK in commerce and in the same channels of trade and customer base as BK's products. Defendants use such marks in connection with distributing, advertising and marketing its products throughout the United States, and in this District.

90. At all times hereinafter mentioned, Defendants' unauthorized use of the trademarks AYP and RXAYP AND DESIGN in connection with marketing, advertising and/or selling its bags is likely to cause confusion, or to cause mistake, or to deceive prospective customers into believing that Defendants' products originated with BH and BK or are associated and affiliated with or sponsored or authorized by BH and/or BK.

91. Upon information and belief, Defendants' copying of BH's marks and all of its acts complained of herein were done with the intent to cause and create a likelihood of confusion among customers with BH's and BK's bags and as to an affiliation between Defendants and BH and/or BK and to capitalize improperly on the goodwill accruing to BH and BK.

92. Defendants intentionally used the trademarks AYP and RXAYP AND DESIGN in connection with the marketing, advertising of its bags in order to mislead the public to the belief that its products and/or business entity was affiliated with BH and/or BK.

93. Defendants by improper use of BH's and BK's trademarks, have falsely described or represented their products as the goods of BK and have, by causing such products to enter into commerce, created a tendency for such false description or representation to be understood as having an origin or sponsorship or license of BH and/or BK, thereby diverting income from BH and BK to Defendants. BH and BK have been, are being and are likely to be damaged by the use by Defendants of the aforesaid false description or representation.

94. At all times relevant hereto, Defendants were aware of BH's and BK's use of the trademarks.

19

95. Upon information and belief, Defendants adopted the marks to portray to potential consumers a relationship between Defendants' products and BK's products.

96. Defendants' use of the trademarks AYP and RXAYP AND DESIGN in connection with its bags misappropriated the goodwill generated by BH through its use of the AYP and RXAYP AND DESIGN, for Defendants' own commercial advantage and to the detriment of BH and was done without the authorization or consent of BH. Through the foregoing acts, Defendants are attempting to capitalize on BH's and BK's goodwill, to falsely imply that some association exists between BH and/or BK and Defendants. BH and BK have no relationship with Defendants.

97. Defendants acted intentionally, willfully and in bad faith and with the intent to injure BH and BK through Defendants' use of the marks AYP and RXAYP AND DESIGN in connection with Defendants' bags in interstate commerce.

98. At all times mentioned, Defendants had no right to trade off of or take advantage of, BH's and BK's goodwill that BH and BK generated through the extensive marketing, advertising and sale of BK's bags.

99. Defendants' aforesaid acts misrepresent the nature, characteristics and quality of Defendants' bags.

100. Accordingly, by virtue of the foregoing, Defendants knowing that they had no permission or authority to do so, traded off and/or took advantage of the customer goodwill that BH and BK had generated through the marketing, and sale of its bags for Defendants' own benefits.

101. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

102. Defendants' aforesaid acts have caused and are causing great and irreparable damage to BH and BK and unless enjoined by this Court, said irreparable injury will continue.

BH and BK demand a monetary judgment along with punitive damages, treble damages and attorney's fees and full costs.

## SEVENTH CAUSE OF ACTION
### (Copyright Infringement)

103.    Plaintiff realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

104.    Plaintiff is the sole owner of the copyright in an original work that is fixed in tangible media of expression. On March 31, 2009, the United States Copyright Office registered the original work, Tote Bag Features "Ask Your Pharmacist" Tote Bag Sell Sheet.  It has been assigned registration  number TX 7-049-741 by the Copyright Office.

105.    Upon information and belief, Defendants produced, reproduced, prepared derivative works based upon, distributed, and publicly displayed Plaintiff's protected work or derivatives of Plaintiff's protected work without its consent.

106.    Defendants' acts violate Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, including Plaintiff's exclusive rights to produce, reproduce, and distribute copies of its work, to create derivative works, and to publicly display its work.

107.    Defendants' infringement has been undertaken knowingly, and with intent to financially gain from Plaintiff's protected copyrighted work.

108.    Because of Defendants' infringing acts, Plaintiff is entitled to its actual damages and Defendants' profits attributable in an amount to be proved at trial and all other relief allowed under the Copyright Act.

109.    Defendants' infringement has caused and is causing irreparable harm to Plaintiff, for which it has no adequate remedy at law. Unless this Court restrains Defendants from infringing Plaintiff's protected work, the harm will continue to occur in the future. Accordingly, Plaintiff is

21

entitled to preliminary and permanent injunction.

110.    By reason of the copyright infringement described above, Plaintiff is entitled to recover Defendants' profits to the extent the same are not included as part of Plaintiff's damages.

111.    In the alternative, at the election of Plaintiff, Plaintiff is entitled to recover from Defendants statutory damages up to $150,000.00 per copyright infringed for Defendants' willful copyright infringement, plus attorneys' fees.

## EIGHTH CAUSE OF ACTION
### (For Vicarious and/or Contributory Copyright Infringement)

112.    Plaintiff realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

113.    As Founder and Chairman of Dayana, Patel had knowledge of the infringing activity, participated materially in the infringing activity, exercised control over the means of the infringing activity, and had the right and ability to supervise the infringing activity, and did in fact supervise it.

114.    Upon information and belief, Patel stood to benefit personally from the infringing activity.

115.    Accordingly, Patel is vicariously and/or contributorily liable for the infringing activity.

116.    By reason of the Defendants' infringing activity and contributory and/or vicarious infringement as alleged above, Plaintiff has suffered and will continue to suffer substantial damages in an amount to be established at trial.

## NINTH CAUSE OF ACTION
### (Trademark Counterfeiting)

117.    Plaintiff realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

22

118.    Plaintiff is the sole owner of the federally registered trademarks ASK YOUR PHARMACIST (Reg. No. 5,225,113), and ASK YOUIR PHARMACIST ABOUT HEALTH NEEDS AND SO MUCH MORE . . . .AND DESIGN (Reg. No. 2,561,326), both for use in connection with paper bags and plastic bags (the "BH Trademarks").

119.    Defendants have used spurious designations that are identical with the Registered Trademarks on goods covered by the registrations for the Registered Marks.

120.    Defendants' use of the BH Trademarks to advertise, promote, offer for sale and distribute Defendants' goods was and is without the consent of BH.

121.    Defendants' unauthorized use of the BH Trademarks on and in connection with Defendants' advertisement, promotion, offering for sale and distribution of goods constitute Defendants' use of the BH Trademarks in commerce.

122.    Defendants' unauthorized use of the BH Trademarks as set forth above is likely to: (a) cause confusion, mistake and deception; (b) cause the public to believe that Defendants' goods are the same as BH's goods or that Defendants are authorized, sponsored or approved by BH or that Defendants are affiliated, connected or associated with or in some way related to BH; and (c) result in Defendants unfairly benefiting from BH's advertising and promotion and profiting from the reputation of BH and its BH Trademarks all to the substantial and irreparable injury of the public, BH and Plaintiff's BH Trademarks and the substantial goodwill represented thereby.

123.    Defendants' acts as aforesaid constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

124.    Defendants' acts are both willful and malicious.

125.    By reason of the foregoing, Defendants are liable to BH for: (a) statutory damages in the amount of up to $1,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c)

of the Lanham Act, or, at BH's election, an amount representing three (3) times BH's damage or Defendants' illicit profits; and (b) reasonable attorney's fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. § 1117(b).

**TENTH CAUSE OF ACTION**
**(For Vicarious and/or Contributory Trademark Counterfeiting)**

126.   Plaintiff realleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

127.   As Founder and Chairman of Dayana, Patel had knowledge of the trademark counterfeiting, participated materially in the counterfeiting, exercised control over the means of the counterfeiting, and had the right and ability to supervise the counterfeiting, and did in fact supervise it.

128.   Upon information and belief, Patel stood to benefit personally from the counterfeiting.

129.   Accordingly, Patel is vicariously and/or contributorily liable for the counterfeiting.

130.   By reason of the Defendants' counterfeiting and contributory and/or vicarious counterfeiting as alleged above, Plaintiff has suffered and will continue to suffer substantial damages in an amount to be established at trial.

**ELEVENTH CAUSE OF ACTION**
**(Trafficking in Counterfeit Marks, N.J.S.A. § 56:3-13.16)**

131.   BH hereby incorporates by reference the allegations set forth above.

132.   Defendants deliberately and intentionally used without BH's consent copies and colorable imitations of the BH Trademarks in connection with the sale and advertisement of goods within the State of New Jersey, with the intention to deceive, or to assist in deceiving the public as to the source, sponsorship and origin of the goods or with the intention to defraud, or to assist defrauding BH, constituting trafficking or attempting to traffic in counterfeit marks in violation of

24

N.J.S.A. 56:3-13.16.

133.   Defendants' actions as alleged herein have caused and will continue to cause irreparable damage and injury to BH if not enjoined by this Court.

134.   BH has no adequate remedy at law.

**PRAYER FOR RELIEF**

**WHEREFORE**, BH respectfully requests that the Court order the following relief:

I.   That the Court enter an injunction ordering that Defendants, their agents, servants, employees, and all other persons in privity or acting in concert with them be enjoined and restrained from: (a) using any reproduction, counterfeit, copy, or colorable imitation of the BH Trademarks or Copyrights to identify any goods or the rendering of any services not authorized by BH; (b) engaging in any course of conduct likely to cause confusion, deception or mistake, or injure BH's business reputation or weaken the distinctive quality of the BH Trademarks; (c) using a false description or representation including words or other symbols tending to falsely describe or represent Defendants' unauthorized goods as being those of BH or sponsored by or associated with BH and from offering such goods in commerce; (d) further infringing the BH Trademarks or Copyrights by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying or otherwise disposing of any products not authorized by BH bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the BH Trademarks or Copyrights; (e) using any simulation, reproduction, counterfeit, copy or colorable imitation of the BH Trademarks or Copyrights in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any

unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to BH, or to any goods sold, manufactured, sponsored or approved by, or connected with BH; (f) making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, sold or offered for sale, or rented by Defendants are in any way associated or connected with BH, or are sold, manufactured, licensed, sponsored, approved or authorized by BH; (g) engaging in any conduct constituting an infringement of any of the BH Trademarks or Copyrights, or of BH's rights in, or to use or to exploit, said Trademarks or Copyrights, or constituting any weakening of BH's name, reputation or goodwill; (h) using or continuing to use the BH Trademarks or trade names or any variation thereof on the Internet (either in the text of a websites, as a domain name, or as a key word, search word, metatag, or any part of the description of the site in any submission for registration of any Internet site with a search engine or index) in connection with any goods or services not directly authorized by BH; (i) hosting or acting as Internet Service Provider for, or operating any websites, that offer for sale any products bearing counterfeits of the BH Trademarks or Copyrights; (j) using any email addresses to offer for sale any nongenuine products bearing counterfeits of the BH Trademarks; (k) having any connection whatsoever with any websites that offer for sale any merchandise bearing counterfeits of the BH Trademarks or Copyrights; (l) secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing,

26

manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, or displaying of all unauthorized products which infringe the BH Trademarks or Copyrights; and (m) effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (l).

II.    Directing that Defendants, within ten (10) days of Judgment, take all steps necessary to remove from all websites they own or control and all text or other media offering for sale any merchandise bearing counterfeits of the BH Trademarks.

III.    Directing that Defendants, within thirty (30) days of Judgment, file and serve BH with a sworn statement setting forth in detail the manner in which Defendants have complied with this injunction pursuant to 15 U.S.C. § 1116(a) and N.J.S.A. 56:3- 13.16(f) and (h)

IV.    Directing that Defendants delivers up for destruction to BH all unauthorized products and advertisements in their possession or under their control bearing any of the BH Trademarks and Copyrights or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of production of same pursuant to 15 U.S.C. §1118 and N.J.S.A. 56:3-13.16(f) and (h).

V.    Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products manufactured, sold or otherwise circulated or promoted by Defendants are authorized by BH or related in any way to BH's products.

VI.    Requiring Defendants pay to BH such damages as BH has sustained as a consequence of Defendants' willful infringement of the BH Trademarks, Copyrights and unfair competition and to account for all gains, profits and advantages derived by Defendants from the sale of infringing merchandise bearing the BH Trademarks and Copyrights and that the award to BH be trebled as provided under 15 U.S.C. §1117 and N.J.S.A. 56:3-13.16(a) and (d); alternatively, that BH be awarded statutory damages pursuant to 15 U.S.C. §1117(c) of up to $1,000,000 for each and every trademark that Defendants has willfully counterfeited and infringed, and statutory damages of $150,000 pursuant to 17 U.S.C. § 504 for each registered BH copyright that Defendants have willfully infringed.

VII.    Ordering that BH recover the costs of this action, together with reasonable attorneys' and investigators' fees and prejudgment interest in accordance with 15 U.S.C. §1117 and N.J.S.A. 56:3-13.16(e), and 17 U.S.C. 505.

VIII.    Ordering that, pursuant to 11 U.S.C.S. §523(a)(6), Defendants be prohibited from a discharge under 11 U.S.C.S. §727 for malicious, willful and fraudulent injury to BH.

IX.    Directing that this Court retain jurisdiction of this action for the purpose of enabling BH to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

X.    Awarding to BH such other and further relief as the Court may deem just and proper, together with the costs and disbursements which BH has incurred in connection with this action.

Dated:  October 16, 2020

Respectfully submitted,


 s/ Brett Van Benthysen
Brett Van Benthysen
Robert W. Clarida (admitted pro hac vice)
Reitler Kailas & Rosenblatt LLC
885 Third Avenue, 20th Floor
New York, NY 10022
Phone:  212-209-3050
Fax:  212-371-5500
Email:  bvanbenthysen@reitlerlaw.com